TUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG ERICKSON )<br><br>Plaintiff, )<br><br>v. )<br><br>TOWN OF ROCKLAND, MA. )<br><br>Defendant ) | Case No.: |

**COMPLAINT**

**INTRODUCTION**

1.      Craig Erickson. ("Erickson"), was a Fire Lieutenant and the only minority employed by the Town of Rockland Fire Department.  Diagnosed with PTSD following a racial assault by a Rockland Selectman while in the line of duty, the Plaintiff has experienced discrimination due to his race, hostility in the workplace resulting from the conviction of the Selectman for the assault and rampant nepotism in the Fire Department.  In 2012, Erickson filed a Request for an Investigation with the Civil Service Commission alleging that the person to be appointed to replace him as acting Fire Captain was in non-compliance with Rockland's residency requirements. Following the Civil Service Commission's grace period to resolve the non-compliance, the Plaintiff was returned to his prior position as Fire Lieutenant. From that point on Erickson was singled out for petty and discriminatory violations of procedure that ultimately culminated in his termination from employment. Through this action, Erickson seeks to assert his claim under Title VII for violations

1

of his civil rights. The Complaint was filed within ninety (90) days of the Dismissal and Notice of Rights issued by the EEOC and mailed on September 4, 2019 to the Plaintiff.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction under Title VII pursuant to 42 U.S.C. Section 2000e et seq. and 28 U.S.C. Section 1331.

3.     Venue is appropriate in this Court as the violations of Mr. Erickson's rights alleged in this complaint were committed within the Commonwealth of Massachusetts, Plymouth County, MA.

## PARTIES

4.     The Plaintiff, Craig Erickson, is a resident of Rockland and former Fire Lieutenant of the Rockland Fire Department.

5.     The Defendant, Town of Rockland, ("Town") is a municipality located in Plymouth County. The Town is governed by a five-member Board of Selectmen.

## SUBSTANTIVE ALLEGATIONS

1. The Rockland Fire Department consists of a Fire Chief, Scott Duffey, a Deputy Chief, David Wooley, a Fire Captain Thomas Heaney, a Day Captain Jason Fricker, four Lieutenants and Twenty firefighters,

2. Lt. Erickson joined the Rockland Fire Department in 1983 as a call Fireman and became a permanent Firemen as a result of his status as a minority under Affirmative Action Laws in effect in 1986.   Lt. Erickson was the only minority member of the Rockland Fire Department.

He was the longest serving active member of the Rockland Fire Department at the time of his termination.

3. During Lt. Erickson's tenure on the Fire Department he has been a Lieutenant since 1994 and acting Fire Captain on two occasions. He has also been a Training Officer and Assistant Fire Alarm Superintendent. (See Exhibit A, Resume of Craig Erickson)

4. In 1996, Lt. Erickson was physically attacked by a former Selectman, Edmund DelPrete, who was subsequently convicted of a racial assault and battery. As a result of this assault, Lt. Erickson was diagnosed with Severe Post Traumatic Stress Disorder ("PTSD"). The nephew of Edmund DelPrete is currently a Lieutenant on the Rockland Fire Department.

5. In 2010, Scott Duffey became Fire Chief of the Rockland Fire Department. Prior to his appointment as Chief, Scott Duffey, Captain Heaney and Eric Peterson were employed by the Norwell Fire Department.

6. In 2012, Lt. Erickson filed a Complaint with the Civil Service Commission stating that the contemplated appointment of Lt. Thomas Heaney to the position of Fire Captain was in violation of the Commonwealth residency laws. Lt. Erickson, at the time he filed the Complaint, was Acting Fire Captain of the Rockland Fire Department.

7. On September 27, 2012, the Civil Service Commission issued a Notice of Full Hearing and Procedural Order which stated in part; "The Commission's Investigation, at this time, is limited solely to the allegations presented as part of the Appellant's initial request for investigation (i.e., - Thomas Heaney's residency status, Civil Service Commission I-12-100).

3

8.  At the full hearing on January 16, 2013 before the Civil Service Commission, Mr. Heaney presented evidence that he had sold his home in Danvers, Massachusetts and was currently in compliance with Section 58, and the investigation under Docket No. I-12-100 was closed.

9.  Thomas Heaney is currently, and at all times material, a Rockland Fire Captain and Vice President of the Firefighter's Union.

10. Prior to filing his Complaint against Heaney with the Civil Service Commission, Lt. Erickson had no written disciplinary reprimands in his personnel file.

11. In 2004, the Appellant applied to and was hired by FEMA for emergency disaster relief participation.

12. The Appellant's FEMA Team was subsequently transferred to the US Department of Health and Human Services and NDMS DMAT/ ASPR Assistant Secretary of Preparedness Response.

13. On or about November 2, 2016, The Lieutenant Erickson was in charge of the Fire Station when a call came in from Abington, a municipality near Rockland, for assistance in fighting a fire. Several Firefighter became insubordinate when Erickson ordered them to respond to the fire call causing a delay in Rockland's response.

14. As a result of this delay in response to the Abington fire, the Fire Chief charged Erickson with failure to properly supervise Firefighters under his command. After a trumped-up hearing on December 28, 2016, the Town Administrator, Allan Chiocca, (Mr. Chiocca has since been terminated by the Town of Rockland and he has  filed a lawsuit in the United States District Court for Massachusetts alleging he was coerced into having sex with a Selectwoman to retain his position as Town Administrator, **Allan Chiocca v. Town of Rockland et al,** case No. 1:19-cv-10482-WGY) Lieutenant Erickson was given a forty-eight hour unpaid suspension.

15. Following this disciplinary action against the Plaintiff, the Fire Chief again brought charges against Erickson based upon the dame November 2, 2016 incident. The charges this time alleged that Erickson had lied during the hearing when he stated that he had given orders to the Firefighter to respond to the Abington fire. These new charges were "allegedly" based upon the statements of two Firefighters present on November 2 to the Fire Chief.

16. The Town Administrator conducted another trumped-up hearing on April 10, 2017, and found the evidence against the Plaintiff creatable and issued him a thirty-day suspension without pay.

17. From this decision, Lieutenant Erickson appealed to the Civil Service Commission (Craig Erickson v. Rockland Fire Department, D-17-092)

18. A Civil Service Hearing on the thirty-day suspension was held on July 13, 2017 before Chairman Bowman of the Commission.

19. In the decision (see Exhibit B) of the Civil Service Commission, Chairman Bowman found the following facts concerning the incident on November 2, 2016:

   a. The Appellant, Craig Erickson, is a tenured Lt. in the Rockland Fire Department. He was hired as a full-time firefighter in 1986 and promoted to Lt. in 1994. He is the most senior member of the Rockland Fire Department. (Testimony of Lt. Erickson)

   b. There are twenty-seven (27) firefighters employed by the Rockland Fire Department.

   c. Lt. Erickson is the only African-American firefighter in the Department. (Testimony of Chief Duffey)

   d. On March 12, 2012, Lt. Erickson filed a request for investigation pursuant to G.L. c. 31, § 2(a) with the Commission, arguing that a Fire Captain in the Rockland Fire Department resided outside of the ten miles of the town limits in violation of civil service law. As part of the proceedings before the Commission, Lt. Erickson alleged that at least one other

member of the Department was in non-compliance with ten-mile requirement. (Erickson v. Rockland Fire Department, CSC Tracking No. I-12-100 (2012; 2013)

e. Firefighter T.H. is the local union president and is the son of the former Fire Chief, who is now the Town's moderator.

f. Firefighter M.M., now retired, is the father of a current member of the Board of Selectmen who served on the Fire Station Building Committee with the Fire Chief.

g. On November 2, 2016, there were six crew members on duty at the Rockland Fire Department station: Lt. Erickson, Firefighter Michael Mullen ("M.M")., Firefighter Thomas Henderson ("T.H")., Firefighter Liam O'Flaherty ("L.O")., Firefighter Scot Margolis (" S.M")., and Firefighter Mark Oshry (" M.O"). On that date, Lt. Erickson was on duty as the senior officer in command. (Testimony of Chief Duffey)

h. At 19:39:57 on November 2, 2016, Abington Fire advised Plymouth County Control of a working fire and requested mutual aid from the Rockland Fire Department. At 19:41:57, on November 2, 2016, Plymouth County Control requested a Rockland engine and Rockland Chief to assist in the fire in Abington (Emergency Incident 16-2688). (Exhibit 4)

i. The Rockland Fire Department crew was expected to be on site as a Rapid Intervention Team (RIT), whose role would be to immediately intervene if other firefighters working the structure fire were in danger. (Testimony of Chief Duffey)

j. On November 2, 2016, Lt. Erickson was operating under an order, General Order DU-45, issued on or about February 25, 2015, that he was not to respond personally to any Abington mutual aid calls due to a prior incident at a mutual aid house fire in Abington.

6

(Exhibit 11, Exhibit 12, and Testimony of Chief Duffey)

k. In lieu of General Order DU-45, when mutual aid calls from Abington come into the
   Department, and Lt. Erickson is on duty, the next senior firefighter under Lt.
   Erickson responds as the senior officer in command. (Testimony of Chief Duffey,
   Exhibit 12)

l. The next senior firefighter under Lt. Erickson when the mutual aid came in on November 2,
   2016 was Firefighter M.M. (Testimony of Chief Duffey)

m. As the next senior firefighter on duty, firefighter M.M. was required to respond as the
   officer in charge to the Abington mutual aid call. (Testimony of Chief Duffey, Lt.
   Erickson and Firefighter T.H.)

n. Shortly after Plymouth County Control's request for a Rockland engine, Lt. Erickson went
   downstairs and entered the Watch Room, where he encountered firefighter M.M.
   (Testimony of Lt. Erickson)

o. Lt. Erickson and firefighter M.M. engaged in a heated conversation that was partially
   overheard by firefighter S.M. (Testimony of S.M. and Exhibit 13)

p. During this heated conversation, Lt. Erickson and firefighter M.M. disagreed about who was
   going on the call. During the disagreement, Lt. Erickson referenced the general order that
   required the most senior firefighter to go in his place regarding mutual aid calls with
   Abington. Firefighter M.M. was stating that the general order had been rescinded.
   (Testimony of S.M.)

q. Lt. Erickson told firefighter M.M. that he (Lt. Erickson) was not allowed to go on the mutual
   aid call and that firefighter M.M., as the senior man, had to go instead. (Testimony of

S.M.)

r. Instead of obeying Lt. Erickson's order, firefighter M.M. called out to firefighter T.H., who
   serves as the Union President. Firefighter T.H. was one of the firefighters who, at this
   point, was supposed to be on the crew headed to the mutual aid call in Abington.
   (Testimony of Lt. Erickson)

s. Firefighter T.H., instead of getting on the truck, came into the Watch Room and joined Lt.

   i.   Erickson and firefighter M.M. (Testimony of T.H.)

t. Firefighters M.M. and T.H. engaged in a heated argument as to who, between Firefighter

u. M.M. and Lt. Erickson, should respond to the call in Abington. (Testimony of T.H.)


v. Firefighter M.M. believed that General Order DU-45 was no longer in effect and that Lt.
   Erickson should respond as the senior officer in command. Firefighter T.H. believed that the
   order remained in effect and that Firefighter M.M. should respond in place of Lt. Erickson.
   (Testimony of T.H., L.O., and Lt. Erickson)

w.  Firefighter T.H. called upon Rockland Fire Chief Scott Duffey to clarify who should
    respond to the scene in Abington. (Testimony of T.H. and Lt. Erickson)

x. Instead of simply telling T.H. to take direction from Lt. Erickson, Chief Duffey informed
   Firefighter T.H. that Firefighter M.M. was to respond (the same directive that Lt.
   Erickson had given to Firefighter M.M. earlier). (Testimony of Chief Duffey and
   Testimony of T.H.)

y. At 19:45:32, <u>more than five (5) minutes after the mutual aid call from Abington was</u>
   <u>initiated,</u> Rockland Fire Department Engine 1 left the station. (Exhibit 4)

z. As referenced above, Firefighter T.H. was scheduled to be one of the firefighters on the crew

headed to Abington. Instead, he informed Lt. Erickson that Firefighter L.O. would go in his place. (Testimony of T.H.)

aa. After the November 2, 2016, call to Abington, Chief Duffey requested that Rockland Fire Deputy Chief Wooley launch an investigation into the actions and events surrounding the incident to determine what caused the delay in response. (Testimony of Chief Duffey)

bb. As part of the investigation, Deputy Chief Wooley spoke with all six crew members and all

cc. six crew members provided a written statement regarding the incident. (Exhibit 4 and Exhibit 13).

dd. In Lt. Erickson's written statement, he wrote, "I stated I am not responding. [Firefighter M.M.] is going. 2 men on step. Order stated Erickson not to go (and) Sr. man to take place of Lt." (Exhibit 13).

ee. Following Deputy Chief Wooley's investigation, Chief Duffey notified Lt. Erickson that a hearing was to take place pursuant to G.L. c. 31, §41 to consider action against Lt. Erickson as a result of his alleged conduct unbecoming while on an emergency response on November 2, 2016. (underlines part of decision text).

ff. A contemplated suspension hearing was held at Rockland Town Hall on December 14, 2016.

gg. Allan Chiocca, Town Administrator, served as the hearing officer. Deputy Chief Wooley, Chief Duffey, Firefighter L.O., Firefighter T.H., and Lt. Erickson testified at the disciplinary hearing. (Exhibit 5)

hh. Lt. Erickson, in verbal testimony at the December 14, 2016 hearing, stated that he issued

9

two orders for firefighters under his command to respond to the Abington fire on

November 2, 2016. He stated that the first order was issued via the Department intercom

system, and the second order was issued with other firefighters present in the Watch room.

(Exhibit 5)

ii. At the conclusion of that hearing, Lt. Erickson was issued a 48-hour unpaid suspension.
(Exhibit 6)

jj. Neither Firefighter M.M. (whose son is a member of the Town's Board of Selectmen and

sereved with Chief Duffey on the Fire Station Building Committee) nor Firefighter T.H. (the

Union President whose father is the former Fire Chief and current Town Moderator)

received any formal discipline. (Testimony of Chief Duffey)

kk. Shortly after the December 14, 2016 hearing, Chief Duffey initiated another investigation
into Lt. Erickson (Testimony of Chief Erickson)

ll. Chief Duffey testified before the Commission that this second investigation was initiated

after Firefighter T.H. (the union president) and Firefighter L.O. "came to me and stated

that, in fact, what Lt. Erickson had said was not true. So, I opened up, I had asked Deputy

Wooley to perform an investigation." (Transcript, p.27; See also Transcript pp. 37-42

(additional testimony from Chief Duffey that the reason for initiating the second

investigation was due to Firefighters T.H. and L.O. coming to him and stating that Lt.

Erickson's testimony at the December 14, 2016 local hearing was untrue.)

mm.Firefighter T.H. testified before the Commission that he had no memory of speaking to

Chief Duffey about Lt. Erickson's alleged untruthfulness at the December 14th hearing and

that he would not have initiated such a conversation with the Chief regarding a union

member. (Testimony of T.H.)

nn. Firefighter L.O. testified before the Commission that he has no memory of even being in the room when Lt. Erickson testified at the December 14th hearing. (Testimony of L.O.)

oo. I do not credit Chief Duffey's testimony that Firefighters T.H. and L.O. approached him after the December 14th hearing and alleged that Lt. Erickson was untruthful during that hearing and thus, I do not credit his related testimony that this was the reason that he initiated a second investigation.[3]

pp. Deputy Chief Wooley conducted this additional investigation. He ordered Lt. Erickson to respond to the following three (3) questions:

  i. Where, in the station, were you when Plymouth County Control announced the working fire in Abington and notified Rockland Fire to respond to the scene?

  ii. Did you at any time give anyone a direct, face to face, order to respond to Abington and if so to whom?

  iii. If the answer to number 2 was yes, where were you when you gave such order? (Ex. 14)

qq. In his written response, Lt. Erickson indicated that he issued two orders on November 2, 2016. He also stated, among others things, that he was working in a hostile environment, that other firefighters were being provided with special treatment and that he was being singled out because of his race. (Exhibit 14)[4]

rr. Deputy Chief Wooley ordered the other firefighters present in the fire station that date to answer up to six (6) questions regarding their recollection of events regarding the day in question. Firefighter M.M. was asked the following five (5) questions:

     i.     Where, in the station, were you when Plymouth County Control announced the working fire in Abington and notified Rockland Fire to respond to the scene?

    ii.     Do you recall the location of Lt. Erickson when the call from Plymouth County q Control was made?

   iii.     Do you recall Lt. Erickson announcing over the intercom that he would he would not be responding?

   iv.     Did you receive a direct order from Lt. Erickson to respond to Abington?

    v.     Do you recall hearing Lt. Erickson order anyone else to respond to Abington? (Exhibit 14)

ss. In regard to question #3, Firefighter M.M. wrote: "I do not recall as I was busy on the dock trying to look up the location of Pilgrim Road." (Exhibit 14)

tt. In regard to question #4, Firefighter M.M. wrote: "I do not recall." (Exhibit 14)[5]

uu. Following Deputy Chief Wooley's investigation, Lt. Erickson was notified that the Department was contemplating issuing him a thirty (30)-day suspension for conduct unbecoming of a fire lieutenant, based upon the verbal testimony he provided during the disciplinary hearing on December 14, 2016, and the written testimony he provided during the follow-up investigation of the events of November 2, 2016. (Testimony of Chief Duffey).

vv. On April 10, 2017, an appointing authority hearing was convened to consider the untruthfulness charges against Lt. Erickson. Allan Chiocca, Town Administrator, was designated as the hearing officer by Chief Duffey. Firefighter S.M., who testified before

the Commission that he heard Lt. Erickson tell firefighter M.M. that he (Lt. Erickson) was

not allowed to go on the mutual aid call and that firefighter M.M., as the senior man, had to

go instead, did not testify at the local appointing authority hearing on April 10th. Firefighter

M.M., the firefighter who failed to abide by Lt. Erickson's directive, also did not testify.

(Exhibit 3)

ww. Following the hearing, on April 27, 2017, Lt. Erickson was issued a thirty (30) day

suspension. The Town Administrator, in his capacity as hearing officer wrote in

part:

       i. "The chaos and delay that occurred during the Abington mutual aid call was the direct result of Lt. Erickson's failure to properly supervise firefighters under his command. He has compounded this failure in leadership by offering an excuse that lacks any credibility. As for the first order, there is no dispute that the intercom system was functioning properly, nor was there any explanation as to why firefighters on duty would not have heard the order. I find that specific statement to be untrue; if the first order were given over the intercom system at least one firefighter would have heard it. As to the second order, allegedly given in the watch room, there is no credible evidence that supports the assertion that the order was given; no firefighter present heard it. The notion that a Lt. with decades of service would walk into a loud situation and issue an order that was unlikely to be heard is nonsensical." (Exhibit 3)

20. Based upon the foregoing Findings of Fact, the Civil Service Commission made the

following analysis of the Plaintiff's thirty-day suspension by the Town of Rockland:

After receiving a call for mutual aid from the neighboring Town of Abington on November

2, 2016, Lt. Erickson, a veteran Rockland firefighter with over thirty (30) years of

experience, and the officer in charge that day, told a subordinate firefighter that, according

to a standing order issued by the Fire Chief, he (the subordinate firefighter) was to respond

to the call. For approximately five (5) minutes, Rockland failed to respond to that mutual

13

aid call because the firefighter failed to heed the direction of Lt. Erickson. Instead, that

firefighter, now retired, whose son serves on the local Board of Selectmen, questioned Lt.

Erickson's decision and sought the opinion of another firefighter who is the local union

president. A shouting match ensued between these two (2) firefighters which resulted in a

call to the Fire Chief to settle the dispute, while the fire apparatus sat idle in the station. The

picture of insubordination toward Lt. Erickson painted here is even more troubling

considering that Lt. Erickson is the only minority firefighter in the Rockland Fire

Department.

The Fire Chief's response to this insubordination was to suspend Lt. Erickson for forty-

Eight (48) hours for lack of leadership while issuing no formal discipline against the

insubordinate firefighter.  Under similar circumstances, the Commission, in Kennedy v.

City of Pittsfield, 22MCSR 20 (2009), overturned the three (3)-day suspension of an acting

police sergeant who was disciplined for events related to an argument with a subordinate

police officer who failed to heed the direction of the acting sergeant, while the subordinate

police officer received only a written warning.

 The upside-down nature of all this didn't end there. After Lt. Erickson served the forty-

eight (48) hour suspension without filing an appeal, the Fire Chief initiated a second

investigation of Lt. Erickson which resulted in the thirty (30)-day suspension that is the

subject of this appeal.  In his testimony before the Commission, the Town's Fire Chief

stated that the second investigation was initiated after two individual firefighters

approached him and accused Lt. Erickson of lying during his testimony at the local hearing

related to the forty-eight (48)-hour suspension.  Both of those firefighters, who were

14

sequestered, testified before the Commission and offered testimony which directly

contradicts the Fire Chief. Firefighter T.H. testified before the Commission that he had <u>no</u>

memory of making such an allegation to the Fire Chief, and that it would be inconceivable

for him to do so as the Union President. The other firefighter cited by the Fire Chief

testified before the Commission that he had <u>no</u> memory of hearing Lt. Erickson testify at

the local hearing and he does not believe that he was even in the room when Lt. Erickson

testified. I credit the testimony of these two (2) firefighters. They did <u>not</u> make allegations

of untruthfulness against Lt. Erickson to the Fire Chief and thus, this was <u>not</u> the basis of

the Fire Chief's decision to initiate a second investigation against Lt. Erickson.

The results of this second "investigation", the genesis of which now cannot be explained,

relied heavily on the statements of other firefighters including: a) the insubordinate

firefighter who was not disciplined and who wrote that he could "not recall" if Lt. Erickson

issued him an order to go on the call that day; and b) another firefighter who was not in the

watch room when Lt. Erickson issued his directive and who subsequently got into a

shouting match with the insubordinate firefighter while the Department failed to

immediately respond to the mutual aid call.

At the local hearing, the three (3) firefighters that testified before the hearing officer (the

Town Administrator) all stated that they were <u>not</u> in the watch room <u>prior</u> to the verbal

argument between Firefighter M.M. and Firefighter T.H. As referenced in the findings, Lt.

Erickson's directive to Firefighter M.M. occurred <u>prior to the verbal argument</u> between him

and Firefighter T.H. Also, at the local hearing, the hearing officer did not hear from

Firefighter S.M. or Firefighter M.M. As referenced in the findings, Firefighter S.M., who

was in earshot of the conversation between Lt. Erickson and Firefighter M.M.in the watch room prior to their verbal confrontation, did testify before the Commission and stated that Lt. Erickson told firefighter M.M. that he (Lt. Erickson) was not allowed to go on the mutual aid call and that firefighter M.M., as the senior man, had to go instead. Further, Firefighter T.H. testified at the local hearing that, even if the directive from Lt. Erickson occurred after that, he would not have heard it over the yelling between him and Firefighter M.M.  For these reasons, my findings here differ significantly from the Town as I have found that Lt. Erickson did issue a directive to Firefighter M.M., directing him to respond to the mutual aid call in Abington. Put another way, it was Firefighter M.M. who was arguably not credible when he wrote, as part of an internal investigation, that he could "not recall" whether he received an order from Lt. Erickson to respond to the call.  He did.  Yet, the Department took no action against Firefighter M.M. and chose to pursue what appears to be an unprecedented second investigation for allegedly untruthful statements made by Lt. Erickson during the local appointing authority hearing in which he was defending himself against the already eyebrow-raising charges related to "lack of leadership" that day.

The Town Administrator also found that Lt. Erickson was untruthful when he stated that he gave an initial order over the fire station's intercom that day. Lt. Erickson testified before the Commission that he did give such an order over the intercom and the other firefighters testified before the Commission that they did not recall hearing any such order over the intercom. This is a (much) closer call, but, ultimately, I credit the testimony of Lt. Erickson in this regard. His testimony that he gave such an order is logical, considering that it is

undisputed that Firefighter M.M., after Lt. Erickson says he gave the order over the intercom, came to the watch room to question whether he indeed had to go on the call.

In summary, the crux of the Department's case here is that Lt. Erickson lied by stating that he gave orders that day, over the intercom and face-to-face, stating that Firefighter M.M. was to respond to the mutual aid call. Based on all of the information presented at the de novo hearing before the Commission, I have concluded that Lt. Erickson did give such orders.

Finally, the Commission is charged with ensuring the "equitable treatment of similarly situated individuals." Police Comm'r of Boston v. Civ. Serv. Comm'n, 39 Mass.App.Ct. 594, 600 (1996). In promoting these principles, the commission cannot detach itself from the underlying purpose of the civil service system— 'to guard against political considerations, favoritism and bias in governmental employment decisions." Id. (citations omitted).

To me, this case is a stark and troubling example of disparate treatment. A firefighter whose son sits on the Board of Selectmen and served with the Fire Chief on the Fire Station Building Committee faced no formal discipline for: a) engaging in insubordination; and b) providing what appear to be less than credible responses during an internal investigation.[6] On the other hand, Lt. Erickson, the only minority firefighter in the Rockland Fire Department, who recently exercised his right to request an investigation regarding whether certain firefighters were complying with a civil service requirement

17

related to place of residence, was investigated and disciplined (twice) for issues related to the same incident.

For all of the above reasons, Lt. Erickson's appeal is hereby *allowed*; his thirty (30)-day suspension is overturned; and the Department shall restore all compensation or other rights to Lt. Erickson related to this thirty (30)-day suspension.[7]

*Christopher Bowman, Civil Service Commission*

21. Following the Plaintiff's Request for an Investigation, the Fire Chief began to publicly berate and humiliate the Plaintiff over any perceived shortcoming in his conduct as a Lieutenant in the Rockland Fire Department. This misconduct included the toleration of insubordination by Firefighters under the Plaintiff's command.

22. The Fire Chief's verbal harassment on the Plaintiff included "in your face" shouting that the Fire Chief knew, or should have known, would trigger a re-occurrence of the Plaintiff's PTSD.

23. As a direct result of the Fire Chief's verbal harassment, the Plaintiff suffered several re-occurrences of PTSD that required him to take accrued sick time.

24. Because of the severity and debilitating effects of the PTSD, the Plaintiff sought 111F benefits from the Town of Rockland.

25. At a meeting of the Rockland Board of Selectmen to consider Plaintiff's request for 111F benefits, the Fire Chief and Town Counsel opposed the request. The Town Counsel, during a discussion on the effects of PTSD, told the Board of Selectmen that PTSD was just "like falling off your bike and breaking your arm". The Selectmen, after obtaining

Erickson's medical records, voted to deny him 111F benefits.

26. The Plaintiff's medical care providers identified the Fire Chief's verbal assaults on the Plaintiff as the trigger for the re-occurrences of his disabling PTSD. The Plaintiff was ordered by his medical care provider, Dr. Goldbaum, to have no contact with the Fire Chief until he determined Erickson's symptoms were in remission. Dr. Goldbaum further encouraged, as part of the Plaintiff's therapeutic treatment to relieve his PTSD symptoms, the Plaintiff to work with NDMS/DMAT while out on FMLA leave to promote a more rapid recovery and return to work.

27. On March 9, 2017, Dr. Goldbaum faxed the Fire Chief a letter informing him that Erickson needed to apply for FMLA leave and that ADA accommodations would be required when the Plaintiff returned to work. The letter from Dr. Goldbaum also enclosed Erickson's orders from NDMS/DMAT for deployment on April 3, 2017.

28. On March 13, 2017, the Fire Chief ordered the Plaintiff not to deploy in violation of the proscription against discrimination based upon military service under the federal Uniformed Services Employment and Reemployment Rights Act. ("USERRA", 38 U.S.C. Sections 4301 et seq.)

29. On March 23, Dr. Goldbaum forwarded to the Fire Chief a letter containing four accommodations, which if implemented, would significantly reduce the possibility of a PTSD re-occurrence. The Fire Chief denied all four accommodations recommended by Dr. Goldbaum.

30. During all deployments prior to April 3, 2017, the Plaintiff would contact the Fire Chief's office to arrange for his time on deployment to be credited to his vacation, personal or Lieu

19

of Holiday time for payroll purposes.

31. On April 3, 2017, the Plaintiff could not reach the Fire Chief's office and subsequently asked
his Union President, Thomas Henderson, to inform the Fire Chief that he wanted to use his
vacation, personal or Lieu of Holiday time during the period he was deployed. The Union
President failed to act on the Plaintiff's request.

32. On or about June 12,2017, the Fire Chief demanded payroll records from the Plaintiff
concerning work outside the Fire Department with full knowledge that a prior arbitration
decision (MUPL 13-3158) denied him the right to demand these records.

33. On July 20, 2017, the Plaintiff was served with a Notice of Contemplated
Termination alleging that (1) he engaged in secondary employment on a sick day
(2) that the Plaintiff received sick pay after being cleared for work  (3) deployed in
violation of the Fire Chief's order  (4) refused an order to provide payroll records
from secondary employment and (5) failed to report for duty on June 28, 2017.  This
Notice comes just seven (7) days following the Civil Service Commission hearing on
the Plaintiff's thirty-day suspension on July 13, 2017. (See Exhibit C)

34. As of June 28, 2017, the Plaintiff's current medical care provider, Dr. Downes. Had
not cleared the Plaintiff to return to work at the Rockland Fire Department.

35. On August 8, 2017, the Town Administrator, Allan Chiocca, conducted a hearing on the
Notice of Contemplated Termination. The Plaintiff's employment as a Rockland Firefighter
was terminated as a result of the hearing.

36. The Plaintiff thereafter filed a timely appeal of his termination with the Civil Service
Commission. (D1-17-218)

37. On January 16, 2018, the Civil service Commission conducted a hearing on the Plaintiff's
termination from employment.  A decision of this hearing is presently pending.

## COUNT 1
(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.)

38. The Plaintiff incorporates by reference the averments in Paragraphs 1-37 as fully set forth
herein.

39. Based upon the conduct set forth above, the Town of Rockland has violated Title VII of the
Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

40. The Plaintiff has suffered damages as a result of the Town of Rockland's conduct.


**WHEREFORE**, Mr. Erickson prays for judgment against the Defendants as follows:

A.  A judgment against the Town of Rockland and if favor of Mr. Erickson.

B.  A judgment awarding Mr. Erickson compensatory damages, including but not limited to
back pay and benefits, front pay and benefits, lost raises, lost vacation time and lost
retirement benefits.

C.  A judgment and order awarding Mr. Erickson all legally permissible interest;
and

D.  Such other relief as the Court may deem just and proper.

## JURY DEMAND

Mr. Erickson demands a trial by jury on all causes of action so triable.

Respectfully submitted

Craig Erickson, Pro Se
56 Hatherly Road
Rockland, MA 02370