**EXHIBIT B**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

**CIVIL SERVICE COMMISSION**
One Ashburton Place, Room 503
Boston, MA 02108
(617) 727-2293

CRAIG ERICKSON,
    Appellant,

      v.                             D-17-092

ROCKLAND FIRE DEPARTMENT,
    Respondent

Appearance for Appellant:                Michael Savage
                                         Attorney at Law
                                         Village of Brant Rock
                                       PO Box 92
                                         Brant Rock, MA 02020-0092

Appearance for Respondent:          John J. Clifford, Esq.
                                         Clifford & Kenny, LLP
                                         31 Schoosett Street
                                         Suite 405
                                         Pembroke, MA 02359

Commissioner:                          Christopher C. Bowman

## DECISION

Pursuant to G.L. c. 31, § 43, the Appellant, Craig Erickson (Lt. Erickson), appealed the decision of the Town of Rockland (Town)'s Fire Chief to suspend him for thirty (30) days from his position as a Lt. with the Rockland Fire Department (Department). The suspension was imposed for conduct unbecoming a Fire Lieutenant, specifically for making untruthful verbal and written statements during the course of a Department investigation and disciplinary hearing. The

appeal was deemed to be timely filed with the Civil Service Commission (Commission)[1]. A pre-hearing conference was held on May 23, 2017, at One Ashburton Place, Room 503. The hearing was held on July 13, 2017, at the same location.[2] A digital recording was created of the hearing and both parties were provided with a CD of the proceeding. The hearing was private and the witnesses were sequestered. Following the close of the hearing, proposed decisions were submitted by both parties on August 18, 2017. The Department also submitted a written transcript of the full hearing which shall be the official record.

## FINDINGS OF FACT

Fourteen (14) exhibits were entered into evidence at the hearing. Based upon the documents admitted into evidence and the testimony of:

*Called by the Rockland Fire Department:*

- Scott Duffey, Fire Chief, Rockland Fire Department;

- T.H., Firefighter, Rockland Fire Department

- M.O., Firefighter, Rockland Fire Department

- S.M., Firefighter, Rockland Fire Department

- L.O., Firefighter, Rockland Fire Department

*Called by Lt. Erickson:*

- Craig Erickson, Appellant;

I make the following findings of fact:

---

[1] The Appointing Authority filed a motion to dismiss based on lack of jurisdiction/timeliness, which was denied prior to the beginning of the hearing on July 13, 2017.

[2] The Standard Adjudicatory Rules of Practice and Procedure, 801 CMR §§ 1.00, *et seq.*, apply to adjudications before the Commission with G.L. c. 31, or any Commission rules, taking precedence.

1. The Appellant, Craig Erickson, is a tenured Lt. in the Rockland Fire Department. He was hired as a full-time firefighter in 1986 and promoted to Lt. in 1994. He is the most senior member of the Rockland Fire Department. (Testimony of Lt. Erickson)

2. There are twenty-seven (27) firefighters employed by the Rockland Fire Department. Lt. Erickson is the only African-American firefighter in the Department. (Testimony of Chief Duffey)

3. On March 12, 2012, Lt. Erickson filed a request for investigation pursuant to G.L. c. 31, § 2(a) with the Commission, arguing that a Fire Captain in the Rockland Fire Department resided outside of the ten miles of the town limits in violation of civil service law. As part of the proceedings before the Commission, Lt. Erickson alleged that at least one other member of the Department was in non-compliance with ten-mile requirement. (Erickson v. Rockland Fire Department, CSC Tracking No. I-12-100 (2012; 2013)

4. Firefighter T.H. is the local union president and is the son of the former Fire Chief, who is now the Town's moderator.

5. Firefighter M.M., now retired, is the father of a current member of the Board of Selectmen who served on the Fire Station Building Committee with the Fire Chief.

6. On November 2, 2016, there were six crew members on duty at the Rockland Fire Department station: Lt. Erickson, Firefighter M.M., Firefighter T.H., Firefighter L.O., Firefighter S.M., and Firefighter L.O. On that date, Lt. Erickson was on duty as the senior officer in command. (Testimony of Chief Duffey)

7. At 19:39:57 on November 2, 2016, Abington Fire advised Plymouth County Control of a working fire and requested mutual aid from the Rockland Fire Department. At 19:41:57, on

3

November 2, 2016, Plymouth County Control requested a Rockland engine and Rockland

Chief to assist in the fire in Abington (Emergency Incident 16-2688). (Exhibit 4)

8. The Rockland Fire Department crew was expected to be on site as a Rapid Intervention Team

(RIT), whose role would be to immediately intervene if other firefighters working the

structure fire were in danger. (Testimony of Chief Duffey)

9. On November 2, 2016, Lt. Erickson was operating under an order, General Order DU-45,

issued on or about February 25, 2015, that he was not to respond personally to any Abington

mutual aid calls due to a prior incident at a mutual aid house fire in Abington. (Exhibit 11,

Exhibit 12, and Testimony of Chief Duffey)

10. In lieu of General Order DU-45, when mutual aid calls from Abington come into the

Department, and Lt. Erickson is on duty, the next senior firefighter under Lt. Erickson

responds as the senior officer in command. (Testimony of Chief Duffey, Exhibit 12)

11. The next senior firefighter under Lt. Erickson when the mutual aid came in on November 2,

2016 was Firefighter M.M. (Testimony of Chief Duffey)

12. As the next senior firefighter on duty, firefighter M.M. was required to respond as the officer

in charge to the Abington mutual aid call. (Testimony of Chief Duffey, Lt. Erickson and

Firefighter T.H.)

13. Shortly after Plymouth County Control's request for a Rockland engine, Lt. Erickson went

downstairs and entered the Watch Room, where he encountered firefighter M.M. (Testimony

of Lt. Erickson)

14. Lt. Erickson and firefighter M.M. engaged in a heated conversation that was partially

overheard by firefighter S.M. (Testimony of S.M. and Exhibit 13)

4

15. During this heated conversation, Lt. Erickson and firefighter M.M. disagreed about who was going on the call.  During the disagreement, Lt. Erickson referenced the general order that required the most senior firefighter to go in his place regarding mutual aid calls with Abington.  Firefighter M.M. was stating that the general order had been rescinded. (Testimony of S.M.)

16. Lt. Erickson told firefighter M.M. that he (Lt. Erickson) was not allowed to go on the mutual aid call and that firefighter M.M., as the senior man, had to go instead. (Testimony of S.M.)

17. Instead of obeying Lt. Erickson's order, firefighter M.M. called out to firefighter T.H., who serves as the Union President.  Firefighter T.H. was one of the firefighters who, at this point, was supposed to be on the crew headed to the mutual aid call in Abington.  (Testimony of Lt. Erickson)

18. Firefighter T.H., instead of getting on the truck, came into the Watch Room and joined Lt. Erickson and firefighter M.M. (Testimony of T.H.)

19. Firefighters M.M. and T.H. engaged in a heated argument as to who, between Firefighter M.M. and Lt. Erickson, should respond to the call in Abington. (Testimony of T.H.)

20. Firefighter M.M. believed that General Order DU-45 was no longer in effect and that Lt. Erickson should respond as the senior officer in command.  Firefighter T.H. believed that the order remained in effect and that Firefighter M.M. should respond in place of Lt. Erickson. (Testimony of T.H., L.O., and Lt. Erickson)

21. Firefighter T.H. called upon Rockland Fire Chief Scott Duffey to clarify who should respond to the scene in Abington. (Testimony of T.H. and Lt. Erickson)

5

22. Instead of simply telling T.H. to take direction from Lt. Erickson, Chief Duffey informed
    Firefighter T.H. that Firefighter M.M. was to respond (the same directive that Lt. Erickson
    had given to Firefighter M.M. earlier). (Testimony of Chief Duffey and Testimony of T.H.)

23. At 19:45:32, more than five (5) minutes after the mutual aid call from Abington was
    initiated, Rockland Fire Department Engine 1 left the station. (Exhibit 4)

24. As referenced above, Firefighter T.H. was scheduled to be one of the firefighters on the crew
    headed to Abington.  Instead, he informed Lt. Erickson that Firefighter L.O. would go in his
    place. (Testimony of T.H.)

25. After the November 2, 2016, call to Abington, Chief Duffey requested that Rockland Fire
    Deputy Chief Wooley launch an investigation into the actions and events surrounding the
    incident to determine what caused the delay in response. (Testimony of Chief Duffey)

26. As part of the investigation, Deputy Chief Wooley spoke with all six crew members and all
    six crew members provided a written statement regarding the incident. (Exhibit 4 and Exhibit
    13)

27. In Lt. Erickson's written statement, he wrote, "I stated I am not responding. [Firefighter
    M.M.] is going. 2 men on step. Order stated Erickson not to go (and) Sr. man to take place of
    Lt." (Exhibit 13)

28. Following Deputy Chief Wooley's investigation, Chief Duffey notified Lt. Erickson that a
    hearing was to take place pursuant to G.L. c. 31, §41 to consider action against Lt. Erickson
    as a result of his alleged conduct unbecoming while on an emergency response on November
    2, 2016.

29. A contemplated suspension hearing was held at Rockland Town Hall on December 14, 2016.
    Allan Chiocca, Town Administrator, served as the hearing officer. Deputy Chief Wooley,

6

Chief Duffey, Firefighter L.O., Firefighter T.H., and Lt. Erickson testified at the disciplinary hearing. (Exhibit 5)

30. Lt. Erickson, in verbal testimony at the December 14, 2016 hearing, stated that he issued two orders for firefighters under his command to respond to the Abington fire on November 2, 2016. He stated that the first order was issued via the Department intercom system, and the second order was issued with other firefighters present in the Watch room. (Exhibit 5)

31. At the conclusion of that hearing, Lt. Erickson was issued a 48-hour unpaid suspension. (Exhibit 6)

32. Neither Firefighter M.M. (whose son is a member of the Town's Board of Selectmen and served with Chief Duffey on the Fire Station Building Committee) nor Firefighter T.H. (the Union President whose father is the former Fire Chief and current Town Moderator) received any formal discipline. (Testimony of Chief Duffey)

33. Shortly after the December 14, 2016 hearing, Chief Duffey initiated another investigation into Lt. Erickson. (Testimony of Chief Duffey)

34. Chief Duffey testified before the Commission that this second investigation was initiated after Firefighter T.H. (the union president) and Firefighter L.O. "came to me and stated that, in fact, what Lt. Erickson had said was not true. So I opened up, I had asked Deputy Wooley to perform an investigation." (Transcript, p.27; See also Transcript pp. 37-42 (additional testimony from Chief Duffey that the reason for initiating the second investigation was due to Firefighters T.H. and L.O. coming to him and stating that Lt. Erickson's testimony at the December 14, 2016 local hearing was untrue.))

35. Firefighter T.H. testified before the Commission that he had no memory of speaking to Chief Duffey about Lt. Erickson's alleged untruthfulness at the December 14th hearing and that he

would not have initiated such a conversation with the Chief regarding a union member. (Testimony of T.H.)

36. Firefighter L.O. testified before the Commission that he has no memory of even being in the room when Lt. Erickson testified at the December 14th hearing. (Testimony of L.O.)

37. I do not credit Chief Duffey's testimony that Firefighters T.H. and L.O. approached him after the December 14th hearing and alleged that Lt. Erickson was untruthful during that hearing and thus, I do not credit his related testimony that this was the reason that he initiated a second investigation.[3]

38. Deputy Chief Wooley conducted this additional investigation. He ordered Lt. Erickson to respond to the following three (3) questions:

    1) Where, in the station, were you when Plymouth County Control announced the working fire in Abington an notified Rockland Fire to respond to the scene?

    2) Did you at any time give anyone a direct, face to face, order to respond to Abington and if so to whom?

    3) If the answer to number 2 was yes, where were you when you gave such order? (Ex. 14)

39. In his written response, Lt. Erickson indicated that he issued two orders on November 2, 2016.  He also stated, among others things, that he was working in a hostile  environment, that other firefighters were being provided with special treatment and that he was being singled out because of his race. (Exhibit 14)[4]

---

[3]   To ensure accuracy on this point, I did ask the Fire Chief to address this discrepancy after the testimony of firefighters T.H. and L.O.  Commissioner Bowman: "What was your testimony, Chief, in terms of the two people that came to you after the hearing to reference Erickson's testimony?  Fire Chief:  I said I know I had a conversation with Firefighter [T.H.] and I believe the other one was [L.O.]  There were definitely two, I'm almost positive it was [L.O.]."

[4]   The record does not reflect whether the Town investigated Lt. Erickson's allegations related to a hostile work environment and discrimination based on race.

40. Deputy Chief Wooley ordered the other firefighters present in the fire station that date to answer up to six (6) questions regarding their recollection of events regarding the day in question.  Firefighter M.M. was asked the following five (5) questions:

   1)  Where, in the station, were you when Plymouth County Control announced the working fire in Abington and notified Rockland Fire to respond to the scene?

   2)  Do you recall the location of Lt. Erickson when the call from Plymouth County Control was made?

   3)  Do you recall Lt. Erickson announcing over the intercom that he would he would not be responding?

   4)  Did you receive a direct order from Lt. Erickson to respond to Abington?

   5)  Do you recall hearing Lt. Erickson order anyone else to respond to Abington?
       (Exhibit 14)

41. In regard to question #3, Firefighter M.M. wrote:  "I do not recall as I was busy on the dock trying to look up the location of Pilgrim Road." (Exhibit 14)

42. In regard to question #4, Firefighter M.M.wrote:  "I do not recall." (Exhibit 14)[5]

43. Following Deputy Chief Wooley's investigation, Lt. Erickson was notified that the Department was contemplating issuing him a thirty (30)-day suspension for conduct unbecoming of a fire lieutannt, based upon the verbal testimony he provided during the disciplinary hearing on December 14, 2016, and the written testimony he provided during the follow-up investigation of the events of November 2, 2016. (Testimony of Chief Duffey)

---

[5] The handwriting of M.M. is somewhat illegible, but I believe this portion of his written response is accurate.

9

44. On April 10, 2017, an appointing authority hearing was convened to consider the

untruthfulness charges against Lt. Erickson. Allan Chiocca, Town Administrator, was

designated as the hearing officer by Chief Duffey.  Firefigher S.M., who testified before the

Commission that he heard Lt. Erickson tell firefighter M.M. that he (Lt. Erickson) was not

allowed to go on the mutual aid call and that firefighter M.M., as the senior man, had to go

instead, did not testify at the local appointing authority hearing on April 10th.   Firefighter

M.M., the firefighter who failed to abide by Lt. Erickson's directive, also did not testify.

(Exhibit 3)

45. Following the hearing, on April 27, 2017, Lt. Erickson was issued a thirty (30) day

suspension.   The Town Administrator, in his capacity as hearing officer wrote in part:

"The chaos and delay that occurred during the Abington mutual aid call was the direct result
of Lt. Erickson's failure to properly supervise firefighters under his command.  He has
compounded this failure in leadership by offering an excuse that lacks any credibility.  As for
the first order, there is no dispute that the intercom system was functioning properly, nor was
there any explanation as to why firefighters on duty would not have heard the order.  I find
that specific statement to be untrue; if the first order were given over the intercom system at
least one firefighter would have heard it.  As to the second order, allegedly given in the
watch room, there is no credible evidence that supports the assertion that the order was given;
no firefighter present heard it.  The notion that a Lt. with decades of service would walk into
a loud situation and issue an order that was unlikely to be heard is nonsensical."
(Exhibit 3)

*Legal Standard*

The fundamental purpose of the civil service system is to guard against political

considerations, favoritism, and bias in governmental hiring and promotion.  The commission is

charged with ensuring that the system operates on "[b]asic merit principles." Massachusetts

Assn. of Minority Law Enforcement Officers v. Abban, 434 Mass.256 (2001), citing Cambridge

v. Civil Serv. Comm'n., 43 Mass.App.Ct. 300 (1997).  "Basic merit principles" means, among

other things, "assuring fair treatment of all applicants and employees in all aspects of personnel

10

administration" and protecting employees from "arbitrary and capricious actions." G.L. c. 31, section 1. Personnel decisions that are marked by political influences or objectives unrelated to merit standards or neutrally applied public policy represent appropriate occasions for the Civil Service Commission to act. Cambridge at 304.

G.L. c. 31, § 43 provides: "If the commission by a preponderance of the evidence determines that there was just cause for an action taken against such person it shall affirm the action of the appointing authority, otherwise it shall reverse such action and the person concerned shall be returned to his position without loss of compensation or other rights; provided, however, if the employee by a preponderance of evidence, establishes that said action was based  upon harmful error in the application of the appointing authority's procedure, an error of law, or upon any factor or conduct on the part of the employee not reasonably related to the fitness of the employee to perform in his position, said action shall not be sustained, and the person shall be returned to his position without loss of compensation or other rights. The commission may also modify any penalty imposed by the appointing authority."

An action is "justified" if it is "done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind; guided by common sense and by correct rules of law;" Commissioners of Civil Service v. Municipal Ct. of Boston, 359 Mass. 211, 214 (1971); Cambridge v. Civil Service Comm'n, 43 Mass.App.Ct. 300, 304 (1997); Selectmen of Wakefield v. Judge of First Dist. Ct., 262 Mass. 477, 482 (1928). The Commission determines justification for discipline by inquiring, "whether the employee has been guilty of substantial misconduct which adversely affects the public interest by impairing the efficiency of public service;" School Comm. v. Civil Service Comm'n, 43 Mass.App.Ct. 486, 488 (1997); Murray v. Second Dist. Ct., 389 Mass. 508, 514 (1983).

The Appointing Authority's burden of proof by a preponderance of the evidence is satisfied "if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there;" Tucker v. Pearlstein, 334 Mass. 33, 35-36 (1956).

Under section 43, the Commission is required "to conduct a de novo hearing for the purpose of finding the facts anew;" Falmouth v. Civil Service Comm'n, 447 Mass. 814, 823 (2006) and cases cited.  However, "[t]he commission's task.. .is not to be accomplished on a wholly blank slate. After making its de novo findings of fact, the commission does not act without regard to the previous decision of the [appointing authority], but rather decides whether 'there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision'," which may include an adverse inference against a complainant who fails to testify at the hearing before the appointing authority; Falmouth v. Civil Service Comm'n, Id., quoting internally from Watertown v. Arria, 16 Mass.App.Ct. 331, 334 (1983) and cases cited.

*Analysis*

After receiving a call for mutual aid from the neighboring Town of Abington on November 2, 2016, Lt. Erickson, a veteran Rockland firefighter with over thirty (30) years of experience, and the officer in charge that day, told a subordinate firefighter that, according to a standing order issued by the Fire Chief, he (the subordinate firefighter) was to respond to the call.  For approximately five (5) minutes, Rockland failed to respond to that mutual aid call because the firefighter failed to heed the direction of Lt. Erickson.  Instead, that firefighter, now retired, whose son serves on the local Board of Selectmen, questioned Lt. Erickson's decision and sought the opinion of another firefighter who is the local union president.  A shouting match ensued

12

between these two (2) firefighters which resulted in a call to the Fire Chief to settle the dispute, while the fire apparatus sat idle in the station. The picture of insubordination toward Lt. Erickson painted here is even more troubling considering that Lt. Erickson is the only minority firefighter in the Rockland Fire Department.

The Fire Chief's response to this insubordination was to suspend Lt. Erickson for forty-eight (48) hours for lack of leadership while issuing no formal discipline against the insubordinate firefighter. Under similar circumstances, the Commission, in Kennedy v. City of Pittsfield, 22 MCSR 20 (2009), overturned the three (3)-day suspension of an acting police sergeant who was disciplined for events related to an argument with a subordinate police officer who failed to heed the direction of the acting sergeant, while the subordinate police officer received only a written warning.

The upside-down nature of all this didn't end there. After Lt. Erickson served the forty-eight (48) hour suspension without filing an appeal, the Fire Chief initiated a second investigation of Lt. Erickson which resulted in the thirty (30)-day suspension that is the subject of this appeal. In his testimony before the Commission, the Town's Fire Chief stated that the second investigation was initiated after two individual firefighters approached him and accused Lt. Erickson of lying during his testimony at the local hearing related to the forty-eight (48)-hour suspension. Both of those firefighters, who were sequestered, testified before the Commission and offered testimony which directly contradicts the Fire Chief. Firefighter T.H. testified before the Commission that he had no memory of making such an allegation to the Fire Chief and that it would be inconceivable for him to do so as the Union President. The other firefighter cited by the Fire Chief testified before the Commission that he had no memory of hearing Lt. Erickson testify at the local hearing and he does not believe that he was even in the room when Lt. Erickson

13

testified.  I credit the testimony of these two (2) firefighters.  They did not make allegations of untruthfulness against Lt. Erickson to the Fire Chief and thus, this was not the basis of the Fire Chief's decision to initiate a second investigation against Lt. Erickson.

The results of this second "investigation", the genesis of which now cannot be explained, relied heavily on the statements of other firefighters including:  a) the insubordinate firefighter who was not disciplined and who wrote that he could "not recall" if Lt. Erickson issued him an order to go on the call that day; and b) another firefighter who was not in the watch room when Lt. Erickson issued his directive and who subsequently got into a shouting match with the insubordinate firefighter while the Department failed to immediately respond to the mutual aid call.

At the local hearing, the three (3) firefighters that testified before the hearing officer (the Town Administrator) all stated that they were not in the watch room prior to the verbal argument between Firefighter M.M. and Firefighter T.H.  As referenced in the findings, Lt. Erickson's directive to Firefighter M.M. occurred prior to the verbal argument between him and Firefighter T.H.  Also, at the local hearing, the hearing officer did not hear from Firefighter S.M. or Firefighter M.M.  As referenced in the findings, Firefighter S.M., who was in earshot of the conversation between Lt. Erickson and Firefighter M.M.in the watch room prior to their verbal confrontation, did testify before the Commission and stated that Lt. Erickson told firefighter M.M. that he (Lt. Erickson) was not allowed to go on the mutual aid call and that firefighter M.M., as the senior man, had to go instead.  Further, Firefighter T.H. testified at the local hearing that, even if the directive from Lt. Erickson occurred after that, he would not have heard it over the yelling between him and Firefighter M.M.  For these reasons, my findings here differ significantly from the Town as I have found that Lt. Erickson did issue a directive to Firefighter

14

M.M., directing him to respond to the mutual aid call in Abington.  Put another way, it was
Firefighter M.M. who was arguably not credible when he wrote, as part of an internal
investigation, that he could "not recall" whether he received an order from Lt. Erickson to
respond to the call. He did.  Yet, the Department took no action against Firefighter M.M. and
chose to pursue what appears to be an unprecedented second investigation for allegedly
untruthful statements made by Lt. Erickson during the local appointing authority hearing in
which he was defending himself against the already eyebrow-raising charges related to "lack of
leadership" that day.

 The Town Administrator also found that Lt. Erickson was untruthful when he stated that he
gave an initial order over the fire station's intercom that day.  Lt. Erickson testified before the
Commission that he did give such an order over the intercom and the other firefighters testified
before the Commission that they did not recall hearing any such order over the intercom.  This is
a (much) closer call, but, ultimately, I credit the testimony of Lt. Erickson in this regard.  His
testimony that he gave such an order is logical, considering that it is undisputed that Firefighter
M.M., after Lt. Erickson says he gave the order over the intercom, came to the watch room to
question whether he indeed had to go on the call.

 In summary, the crux of the Department's case here is that Lt. Erickson lied by stating that he
gave orders that day, over the intercom and face-to-face, stating that Firefighter M.M. was to
respond to the mutual aid call.  Based on all of the information presented at the de novo hearing
before the Commission, I have concluded that Lt. Erickson did give such orders.

 Finally, the Commission is charged with ensuring the "equitable treatment of similarly
situated individuals." Police Comm'r of Boston v. Civ. Serv. Comm'n, 39 Mass.App.Ct. 594,
600 (1996).  In promoting these principles, the commission cannot detach itself from the

underlying purpose of the civil service system— 'to guard against political considerations, favoritism and bias in governmental employment decisions." Id. (citations omitted).

To me, this case is a stark and troubling example of disparate treatment. A firefighter whose son sits on the Board of Selectmen and served with the Fire Chief on the Fire Station Building Committee faced no formal discipline for: a) engaging in insubordination; and b) providing what appear to be less than credible responses during an internal investigation.[6] On the other hand, Lt. Erickson, the only minority firefighter in the Rockland Fire Department, who recently exercised his right to request an investigation regarding whether certain firefighters were complying with a civil service requirement related to place of residence, was investigated and disciplined (twice) for issues related to the same incident.

For all of the above reasons, Lt. Erickson's appeal is hereby *allowed*; his thirty (30)-day suspension is overturned; and the Department shall restore all compensation or other rights to Lt. Erickson related to this thirty (30)-day suspension.[7]

Civil Service Commission

*/s/ Christopher Bowman*
Christopher C. Bowman
Chairman

By a vote of the Civil Service Commission (Bowman, Chairman; Camuso, Ittleman, Stein and Tivnan, Commissioners) on March 29, 2018.

Either party may file a motion for reconsideration within ten days of the receipt of this Commission order or decision. Under the pertinent provisions of the Code of Mass. Regulations, 801 CMR 1.01(7)(l), the motion must identify a clerical or mechanical error in this order or decision or a significant factor the Agency or the Presiding Officer may have overlooked in deciding the case. A motion for reconsideration does not toll the statutorily prescribed thirty-day time limit for seeking judicial review of this Commission order or decision.

---

[6] To ensure uniformity, the Town must also now decide how to respond to the starkly conflicting testimony before the Commission between the Fire Chief and two (2) firefighters regarding whether, as stated by the Fire Chief, they accused Lt. Erickson of being untruthful during the local hearing.

[7] Subsequent to this suspension, the Department terminated Lt. Erickson for other reasons. Lt. Erickson appealed that decision to the Commission. The appeal was heard by Commissioner Ittleman and is still pending before the Commission.

Under the provisions of G.L c. 31, § 44, any party aggrieved by this Commission order or decision may initiate proceedings for judicial review under G.L. c. 30A, § 14 in the superior court within thirty (30) days after receipt of this order or decision. Commencement of such proceeding shall not, unless specifically ordered by the court, operate as a stay of this Commission order or decision.  After initiating proceedings for judicial review in Superior Court, the plaintiff, or his / her attorney, is required to serve a copy of the summons and complaint upon the Boston office of the Attorney General of the Commonwealth, with a copy to the Civil Service Commission, in the time and in the manner prescribed by Mass. R. Civ. P. 4(d)

Notice to:
Mike Savage, Esq. (for Appellant)
John J. Clifford, Esq. (for Respondent)

17